UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------
                                         :

KENNETH RADSVICK,                :

                                           :      Case No. 1:18-cv-1872

              Plaintiff,         :

                                           :

vs.                                 :      OPINION & ORDER

                                         :      [Resolving Docs. 13, 14]

UNITED OF OMAHA LIFE INSURANCE   :

CO.,                                  :

                                         :

             Defendant.       :

                                         :

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This case concerns a disability insurance dispute controlled by the Employment

Retirement Income Security Act ("ERISA").

Plaintiff Kenneth Radsvick worked as a heating and air conditioning servicer.[1]

Through his employment, Defendant United of Omaha Life Insurance Co. ("Omaha")

covered Radsvick under a disability insurance policy. Omaha also administered the insurance

plan.[2]

On April 12, 2016, Radsvick suffered a heart attack.[3] Radsvick underwent a successful

cardiac catherization and stent placement.[4] After a second procedure on July 5, 2016,

Radsvick's heart problems largely resolved.[5]

---

[1] Doc. 14 at 2.
[2] Doc. 18-1 at 29.
[3] *Id.* at 242–43.
[4] *Id.*
[5] *Id.* at 225–26.

However, shortly after the heart attack, Radsvick reported cognitive decline, short-term memory loss, and confusion—which continues to today.[6]  Doctors have been unable to determine the cause of Plaintiff's cognitive ailments.

In July 2016, Radsvick applied for long term disability benefits with Omaha, claiming that he was disabled since his April heart attack.[7]  Omaha denied that application initially and on reconsideration.[8]

Plaintiff then brought this ERISA action, challenging Omaha's determination and claiming breach of fiduciary.[9]  Both parties now move for judgment on the administrative record.[10]  For the following reasons, the Court **GRANTS** judgment for Defendant and **DENIES** judgment for Plaintiff.

## I.      Disability Benefits Claim

To qualify for long term disability under the plan, Radsvick generally had to show that he suffered from an illness that prevented him from performing at least one of his material duties for ninety days.[11]  Plaintiff's ninety-day clock started with his April 12, 2016 heart attack, running through July 11, 2016.[12]

However, Defendant Omaha determined that Plaintiff's disability ended by July 10, 2016 rendering him ineligible.  Omaha essentially concluded that Plaintiff's cardiac issues

---

[6] *Id.* at 215; Doc. 14 at 2.
[7] Doc. 18-2 at 132–33.
[8] *Id.* at 257 (initial determination); Doc. 18-1 at 50 (reconsideration).
[9] Doc. 1.
[10] Defendant moves for judgment.  Doc. 13.  Plaintiff opposes.  Doc. 15.  Plaintiff moves for judgment.  Doc. 14.  Defendant opposes.  Doc. 16.
[11] Doc. 18-1 at 24, 33.
[12] Doc. 18-2 at 132–33.

ended after his July 5 catherization and that his claimed cognitive difficulties were not supported by the medical records.

An ERISA-governed disability-plan beneficiary may challenge an administrator's denial of benefits under 29 U.S.C. § 1132(a)(1)(B). Where, as here, the insurance plan gives the administrator interpretative discretion, the Court considers only whether the administrator's decision was arbitrary or capricious.[13] Under this forgiving standard, the Court will uphold the decision so long as "it is the result of a deliberate, principled reasoning process and [] is supported by substantial evidence."[14]

Radsvick claims long-term disability from mental problems and (maybe) heart problems. The Court considers both in turn.

**A.      Plaintiff's Heart Problems**

Plaintiff Radsvick suffered a minor heart attack on April 12, 2016. He was discharged from the hospital two days later after a successful cardiac catherization and stent placement. Afterwards, Radsvick began rehabilitation, which went well.

Plaintiff suffered additional chest pain on July 5, 2016. A second catherization revealed minimal coronary artery disease and a widely patent stent. He was discharged from the hospital on July 7, 2016. Although Radsvick continued cardiac rehabilitation for some continuing months, the records do not indicate any continuing significant cardiac issues after this date.

---

[13] *Id.*

[14] *Bennett v. Kemper Nat. Serv., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008). Among other things, the Court considers the quality and quantity of medical evidence, the nature of the administrator's review, and whether the administrator had a conflict of interest. *Guest-Marcotte v. Life Ins. Co. of N. Amer.*, 730 F. App'x 292, 302 (6th Cir. 2018); *Smith v. Continental Cas. Co.*, 450 F.3d 253, 263–64 (6th Cir. 2006); *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).

Defendant Omaha retained board-certified cardiologist Dr. Jonathon McAllister to review Radsvick's medical records.[15] Dr. McAllister concluded that Radsvick had no cardiac-related work restrictions after July 10, 2016.

Accordingly, Omaha's decision to deny long-term disability benefits from a cardiac perspective was neither arbitrary nor capricious.[16]

## B. Plaintiff's Cognitive Problems

After his heart attack, Radsvick complained to his doctors of dizziness, confusion, and other cognitive difficulties. Plaintiff's wife observed the same symptoms. These complaints continue to the present.

While some of Plaintiff's doctors diagnosed him with cognitive decline, the records reveal little to no objective testing to support these symptoms. A May 2016 CT scan was unremarkable.[17] As were September 2016 MRI and MRA scans.[18] Neurological exams in April 2016 and March 2017 were normal.[19] Similarly, October 2016 neurological records indicate that "testing shows mild changes in [his] thinking with good memory. There is no evidence of a neurodegenerative process or [] dementia."[20]

In fact, after a neurological examination, Radsvick's neurologist wrote that his "reported complaints [were] not reflected in testing."[21] She doubted that he was suffering from a neurodegenerative process at all, and instead attributed his symptoms to lack of

---

[15] Doc. 18-1 at 80.
[16] In fact, it does not seem that even Plaintiff really argues that his cardiac condition justifies long-term disability.
[17] Doc. 18-3 at 96.
[18] Doc. 18-2 at 50.
[19] Doc. 18-1 at 216; Doc. 18-2 at 50–51.
[20] Doc. 18-2 at 18.
[21] *Id.* at 51.

sleep or stress.[22]  Apparently one doctor told Radsvick that his symptoms were "all in [his] head and [he needed] to see a psychiatrist."[23]  And, while a few rehabilitation records indicate "fogginess" and confusion, most do not.

Finally, Defendant Omaha retained board-certified neuropsychologist Dr. Elana Mendelssohn to review Radsvick's file.  She found that the record did not support psychiatric diagnoses, neuropsychological impairments, or neuropsychological-related work restrictions.[24]

This is not to say that Omaha's process and decision were perfect.  In fact, Defendant danced dangerously close to an arbitrary decision.

For example, even though Omaha had the ability to physically examine Radsvick, it instead only reviewed Radsvick's medical records.  Although a "paper review" is not inherently objectionable, Omaha's failure to take advantage of an available physical examination "raises questions about the thoroughness and accuracy of the benefits determination."[25]

Additionally, the Social Security Administration determined that Radsvick was disabled.  While not dispositive, this too weighs against Omaha's conclusion.[26]  Although, the notice of Social Security benefits Plaintiff submitted to Omaha contained no analysis.

Finally, Omaha's role as plan administrator and payer of disability benefits creates a conflict of interest.  This too undercuts Defendant Omaha's decision.[27]

---

[22] *Id.* at 22–23.
[23] Doc. 18-1 at 226.
[24] *Id.* at 62–63.
[25] *Guest-Marcotte*, 730 F. App'x at 301.
[26] *DeLisle v. Sun Life Asurr. Co. of Canada*, 558 F.3d 440, 446 (6th Cir. 2009).
[27] *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 590–91 (6th Cir. 2012).

This was a close case and, if the Court were reviewing the record *de novo*, it might find Plaintiff disabled. But it is not. Considering the non-corroborating—at times undermining—objective medical evidence, Omaha's decision was not arbitrary or capricious.

## II.    Breach of Fiduciary Duty Claim

Radsvick also brings a claim for breach of fiduciary duty under ERISA. However, a plaintiff may only bring an ERISA fiduciary duty claim if ERISA's other provisions are inapplicable.[28] Because Radsvick was able to use § 1132(a)(1) to challenge his benefits denial, he may not also challenge the denial as a breach of fiduciary duty.

For the foregoing reasons, the Court **GRANTS** judgment for Defendant and **DENIES** judgment for Plaintiff.

IT IS SO ORDERED.

Dated: August 21, 2019                                   s/        *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE

---

[28] *Strang v. Ford Motor Co. Gen. Retirement Plan*, 693 F. App'x 400, 405 (6th Cir. 2017); *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015); *Wilkins v. Baptist Healthcare Sys, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998).